UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                          **Case No. 8:23-cr-385-VMC-CPT**

**JUSTIN RYAN CULMO**
_____/

**SENTENCING MEMORANDUM AND MOTION FOR VARIANCE**

The defendant, JUSTIN RYAN CULMO, by and through undersigned counsel, files this Sentencing Memorandum and Motion for Variance, and in support states as follows:

Introduction

Mr. Culmo pled guilty to three counts of Production of Child Pornography (Counts 1,3,4) in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); one count of Count of Distribution of Child Pornography (Count 2) in violation of 18 U.S.C. § 2252(a)(2) and (b)(2); one count of Possession of Child Pornography in (Count 5) in violation of § 2252(a)(4)(B) and (b)(2); and one count of Production of Child Pornography that is an Adapted or Modified Depiction of a Minor (Count 6) in violation of 18 U.S.C. § 2252(a)(7) .

The United States Probation Office has prepared a Presentence Report (PSR), which suggests that the advisory range under the federal sentencing

guidelines, while stated in months, is effectively life imprisonment. This is based on a total offense level of 43, and a Criminal History Category I.

## A.  Factors Relevant to an Appropriate Sentence under 18 U.S.C. § 3553(a).

The factors relevant to an appropriate sentence under 18 U.S.C. § 3553(a) are familiar yet worth repeating. After calculating the sentencing guidelines, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Talley*, 431 F.3d 784, 787-88 (11th Cir. 2005). These factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the seriousness of the offense; the need to promote respect for law; just punishment; deterrence; protection of the public; providing the defendant with needed educational or vocational training or medical care; the kinds of sentences available; the Sentencing Guidelines range; pertinent policy statements of the Sentencing Commission; the need to avoid unwanted sentencing disparities; and the need to provide restitution to victims. "[S]entencing courts may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (internal quotation omitted). The guiding principle in Section 3553(a) requires a district court to assign a

sentence "sufficient, but not greater than necessary'" to comply with the purposes of sentencing.

**B.     Grounds for a Sentence Below the Advisory Guideline Range**

Mr. Culmo maintains there are numerous grounds which individually and certainly collectively require a sentence meaningfully below the range calculated by the Probation Office. These factors include:

(1) Mr. Culmo's lack of criminal history.

(2) The guideline calculation effectively gives Mr. Culmo no credit for acceptance of responsibility.

(3) Mr. Culmo's efforts to cooperate with the Government should be credited in a meaningful way.

(4) Mr. Culmo has relevant mental health issues, some of which were not previously diagnosed.

(5) Mr. Culmo does not pose a significant risk to re-offend when released.

**C.     Application of the Section 3553 Factors to This Case.**

While the Court, of course, will consider all of the factors set forth in Section 3553, Mr. Culmo suggests the following are particularly relevant.

**1.     <u>Mr. Culmo's Personal History and Characteristics</u>**

Mr. Culmo is forty years old. He was born in Plantation, Florida. However, shortly thereafter his parents, who were not married at the time,

separated and he moved with his mother to Safety Harbor where he was raised. PSR ¶ 99. His mother married when he was approximately six years old but divorced a year later due her husband's alcohol abuse. His parents then married a couple of years later. PSR ¶ 99. This marriage also lasted only a couple of years due to his father's abusiveness. PSR ¶ 100. He has a "positive but distant" relationship with this mother. Imhof Report Pg. 1. Although he has a few "informational" conversations with his father since his arrest, his last contact with his father before his arrest was in 2019. Imhof 1. He describes being the focus of his father's abusive behavior on occasion. Imhof 1-2.

Mr. Culmo was given an Exceptional Special Education (ESE) in second grade for what he believed to be an ADHD diagnosis. Imhof 2. This was confirmed by his mother. PSR ¶ 102. He was transferred to a private school for fourth to sixth grade. He then returned to public school and ultimately graduated from Countryside High School in Clearwater. Imhof 2. He had few friends in school and recalls being the victim of bullying because of his weight. Imhof 2, PSR ¶ 103. He was a member of the band in both middle school and high school. Imhof 2. He attended the University of Central Florida after high school and earned a mechanical engineering degree. Imhof 2. After he graduated from college he worked for several private companies. Imhof 3. PSR ¶¶ 129-131.

Before he was arrested, Mr. Culmo was gainfully employed, owned a home, and was involved in the community. PSR ¶¶ 108, 115, 131. He was recently divorced while in custody.[1] Other than traffic misdemeanor offense when he was 21 years old, he has no criminal history. PSR ¶ 93.

### 2. Relevant Mental Health Issues

Mr. Culmo recalled that at six or seven years old, he was evaluated by a number of mental health professionals due to difficulties in school and received varying diagnoses, including Oppositional Defiant Disorder, Intellectual Disability and ADHD. Imhof 3. He was placed in an impatient facility for a seizure disorder related to "zoning out" but ultimately did not receive a diagnosis. Imhof 4. He was prescribed Ritalin as a child. Imhof 4. As an adult, he was prescribed Wellbutrin for depression. Imhof 4.

Mr. Culmo has been evaluated by two forensic psychologists in connection with this matter. Dr. Valerie McClain determined that he is on the Autism Spectrum. For this determination, she used the GARS-3, which measures assess difficulties in six areas including Restricted/Repetitive Behaviors, Social Interaction, Social Communication, Emotional Responses, Cognitive Style, and Maladaptive Speech. She additionally agreed with the

---

[1] He did receive proceeds from the divorce proceedings from which he has agreed to pay the requested restitution. The likelihood of receiving proceeds from the divorce was not known when the Pre-sentence Report was prepared. See PSR ¶ 132-134. This should be included in the final PSR.

prior diagnoses of Major Depressive Disorder and Attention-Deficit/Hyperactivity Disorder. He had not previously been diagnosed with Autism. While by no means offered as an excuse for the conduct in this case, Dr. McLain concludes that Mr. Culmo "is also markedly impaired for his ability to understand interpersonal and sexual boundaries which impacts his ability to understand and follow appropriate social norms with regard to his interactions in both personal and virtual settings." McLain Report Pg. 4. Dr. McClain's Report is attached.

Building on Dr. McClain's evaluation, Dr. Eric Imhof conducted a psychological evaluation and risk assessment for future sexual offending on April 2, 2025. This evaluation lasted over six hours. Imhof 1. Dr. Imhof concluded that there are significant mental health issues including autism spectrum disorder and ADHD, both by history, and provisionally Major Depressive Disorder. Imhof 9. Dr. Imhof performed a MMPI-3 test suggesting that Mr. Culmo feels "helpless, hopeless, and pessimistic.". Imhof 5.

Dr. Imhof also performed familiar and accepted testing to measure the risk of reoffending, including the Static-99 and the STABLE 2007. While it is true that Mr. Culmo qualifies for diagnosis of Pedophilic Disorder (non-exclusive type, sexually attracted to females) as well as other diagnosis, he is considered to be only in the average risk for re-offending, 3.2% at five years, 5.1% at ten years, and 6.3% at twenty-years post release back into the

6

community. Imhof 9. Moreover, as his sexual interest in prepubescent minors is toward females which is associated with a lower risk of re-offending. Imhof 10. Should Mr. Culmo, as he intends to, completes a comprehensive treatment program while in prison he is up to 37% less likely to commit sexual offenses in the future. Imhof 10. Dr. Imhof's report is also attached.

### 3. <u>Acceptance of Responsibility</u>

Mr. Culmo's statement concerning his matter is attached as well. He has pled guilty and has unambiguously expressed remorse. Both Dr. McClain and Dr. Imhof indicate that Mr. Culmo expressed responsibility for his actions and a desire to seek out mental health treatment. McLain 4, Imhof 2.

Although the PSR recognizes a three-level reduction for acceptance of responsibility, this has no effect on the final guideline range. Thus, Mr. Culmo finds himself in the same position he would have been had he contested this matter at trial. Mr. Culmo respectfully maintains that his acceptance of responsibility should be reflected in the sentence imposed.

As evidenced by his extensive cooperation discussed below, Mr. Culmo unreservedly has accepted full responsibility for the entirety of his criminal conduct. Had this case proceeded to trial not only would it have re-traumatized the victims, but it additionally would have caused substantial expenditure of effort and resources to the Court as well as the Government. Mr. Culmo's guilty plea, despite understanding that the severity of the potential sentence, avoided

all these consequences. Additionally, Mr. Culmo, as noted above, has entered an agreement to pay the requested restitution from the divorce proceeds. Mr. Culmo respectfully submits that some meaningful credit should be given to his acceptance of responsibility.

### 4. Cooperation

Mr. Culmo has made a good-faith effort to cooperate with the Government. While this cooperation has not been recognized by the Government under USSG §5K1.1, this remains a substantial mitigating consideration bearing specifically on remorse and rehabilitative intent as well as more generally on his character under Section 3553(a)(1).

Every Circuit that has considered the matter has held that a sentencing court has the power to consider a defendant's cooperation under § 3553(a), irrespective of whether the Government files a §5K1.1 motion. *See United States v. Robinson*, 741 F.3d 588, 599 (5th Cir. 2014)(citing *United States v. Landrón–Class,* 696 F.3d 62, 77–78, (1st Cir. 2012) *United States v. Massey,* 663 F.3d 852, 858 (6th Cir.2011); *United States v. Leiskunas*, 656 F.3d 732, 737 (7th Cir.2011); *United States v. Fernandez*, 444 F.3d 19, 33 (2d Cir. 2006); and *United States v. Doe,* 398 F.3d 1254, 1260–61 (10th Cir.2005)). Further, the failure of a sentencing court to recognize its discretion to consider a defendant's cooperation under § 3553(a)(1) is a significant procedural error. *Robinson* 741 F.3d at 599.

As the Fifth Circuit expressed in *Robinson,* nothing in the text of § 3553(a) suggests that a §5K1.1 motion should be the exclusive means for considering cooperation. Section 3553(a)(1) is a broadly worded provision guiding the sentencing court in its exercise of discretion. *See Robinson* at 599-600 *(*citing *Gall v. United States,* 552 U.S. 38, 49 n. 6, 128 S. Ct. 586 (2007)). Indeed, § 3553(a)(1) "contains no express limitations as to what 'history and characteristics of the defendant' are relevant." *Id.* citing *United Fernandez,* 443 F.3d at 33.

Although the Government is not prepared (or required) to file a USSG §5K1.1 motion, this case did not involve a mere proffer session. Mr. Culmo with his counsel present submitted to a full and complete debriefing for approximately seven hours and over a two-day period on April 4 and 5, 2024. The then-assigned Assistant United States Attorney was present on the first day. The debriefing was conducted by two Department of Homeland Security Agents, one from Portland Maine, and an HSI forensic analysist. While no promises were made, Mr. Culmo was advised that any information concerning minors he was involved with would be considered for acceptance of responsibility only. As discussed above, Mr. Culmo's guideline calculation provides no effective credit for acceptance of responsibility. He was, however, further advised that any information concerning other individuals and his activities on the "dark web" would be considered for cooperation purposes.

The first half of the first day was largely devoted to questioning Mr. Culmo concerning forensic issues which were apparently of interest to the interviewers. Specifically, he discussed the structure of his hard drives, the materials saved on them, and why he backed them up. As he also discussed how he any, how he password-protected them or had them encrypted. As part of this discussion, he provided the agents with all his passwords, including his two factor authentication keys. He discussed how he would access the "dark web." Over the course of the interviews, he also discussed the use of Artificial Intelligence and Stable Diffusion.

Mr. Culmo identified images of minors and discussed the circumstances of various offenses. He was candid, detailed, and took his time to explain without prompting or correction. He also admitted to the devices used in each instance.

### 5. Avoiding Unwarranted Sentencing Disparity

While no doubt lengthy sentences are routine with these charges, both the average and median sentence imposed for an offender in Mr. Culmo's position, level 43 Criminal History Category I, with a primary guideline of USSG §2G2.1 is well-below the Probation Office's calculation. According to United States Sentencing Commission statistics, During the last five fiscal years (FY2020-2024), there were 859 defendants whose primary guideline was §2G2.1, with a Final Offense Level of 43 and a Criminal History Category of I,

after excluding defendants who received a §5K1.1 substantial assistance departure. For the 859 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 345 month(s) and the median length of imprisonment imposed was 360 month(s). [2] Further, during the same time period seventy-two percent of offenders in that category received downward departures or variances.

## CONCLUSION

Mr. Culmo maintains that a sentence below the guideline range is appropriate under the current circumstances. Such a sentence will satisfy all the reasonable sentencing considerations set forth in 18 U.S.C. § 3553.

>Respectfully submitted,
>
>A. Fitzgerald Hall, Esq.
>Federal Defender
>Middle District of Florida
>
>/s/ Russell K. Rosenthal
>Russell K. Rosenthal
>Florida Bar No. 0319244
>Assistant Federal Defender
>2075 West First Street, Suite 300
>Fort Myers Florida 33901
>Telephone: 239 334-0397
>Facsimile: 239 334-4109

---

[2] Sentences of 470 months or greater (including life) were included in the sentence average and median computations as 470 months.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of May 2025, a true and correct copy of the foregoing has been filed in this court and a copy was forwarded by electronic mail to Abigail King, Assistant United States Attorney.

<u>/s/ Russell K. Rosenthal</u>
Russell K. Rosenthal, Esq.
Assistant Federal Defender