UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:23-cr-385-VMC-CPT

JUSTIN RYAN CULMO

## SENTENCING MEMORANDUM

The United States files this sentencing memorandum requesting this Court sentence the defendant, Justin Ryan Culmo, to life in prison. In support thereof, the United States submits as follows:

### I.    Background

Over more than a ten-year period, the defendant has been a prolific producer of child pornography. He has published thousands of self-produced images and videos of his sexual abuse of minors on the internet, distributing them to anyone that would view them. He participated in chat rooms dedicated solely to the sexual abuse of children, bragged about his sexual abuse of minors, as young as infants, and provided advice on how to avoid being detected by law enforcement while engaging in behavior related to child pornography. The defendant talked about providing children night cold medicine to be able to take better sexual advantage of them. One child victim confirmed the defendant's providing of nighttime medication to her that made her feel sleepy. The defendant also wrote on online forums about the potential

of using mixed drinks or hallucinogens to make sure the older children enter into a deep sleep so he could sexually abuse them without getting caught.

He set up spy cameras in the bathroom in his own home as well as several public restrooms at places children frequent, to record unsuspecting children in what is supposed to be a safe space. He used those surreptitious recordings for his own sexual gratification. The defendant provided camera recommendations and advice on how other individuals could properly set up spy cameras. He created child pornography using artificial intelligence, taking innocent photos of children in his presence, whether it be in private or in public places such as Disney World, and turned the photos into child sexual abuse material.

No one was safe from this defendant. Not family, the children of his friends, the children he was babysitting, nor the children of females he was dating. Not preteens, toddlers nor infants. The defendant made opportunities when they shouldn't have existed. He sexually abused a co-worker's toddler while the co-worker and his wife were home. He had no independent access to that toddler, but created a situation in which he could step away for a few minutes while the toddler was in its crib and sexually abuse the toddler and record it. The defendant got excited about potentially being caught by another adult and bragged about getting away with his criminal sexual abuse on online forums. When arrested by law enforcement, the defendant admitted to sexually abusing over one dozen child victims and stated "I don't remember every name." He had nearly 200,000 images and videos of child pornography and child erotica on his devices. He admitted to producing

approximately 3000-4000 images of artificial intelligence child pornography in just one month. He admitted to the sexual abuse of several children.

Law enforcement was able to identify over one dozen victims of this defendant; however, there are dozens more. This defendant is truly the worst of the worst. He is responsible for at least six known series identified by the National Center for Missing and Exploited Children. The physical and emotional trauma he has inflicted on dozens of individuals will last forever. Some individuals will be present at sentencing to share with this Court how deeply this defendant's actions have affected them. Other statements will be shared with the Court[1].

On December 5, 2024, the defendant pleaded guilty to Counts One through Six of the Superseding Information. This case involved a Notice of Maximum Penalties, in which the defendant refused to admit to relevant conduct in the factual basis and the parties had to strike out those paragraphs to facilitate the plea.

## II.    <u>Presentence Investigation Report</u>

On May 13, 2025, the United States Probation Office issued its Final Presentence Investigation Report (PSR). Doc. 86. The defendant's highest calculated offense level is 51 points; however, based on the United States Sentencing Guidelines, Chapter 5, Part A, comment n.2, "in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43." PSR ¶¶ 87-90. As such, based on the defendant's adjusted offense level of 43 and

---

[1] Several written statements have been provided by victims and family members of victims. Those will be attached under seal to this memorandum and shared in court.

a criminal history category of I, his guideline range of imprisonment is life. PSR ¶ 137. However, the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 1740 months (approximately 145 years). *Id*. Counts One, Three and Four carry a minimum term of imprisonment of 15 years, and Count Two carries a minimum term of imprisonment of 5 years. PSR ¶ 136.

### III.    Argument for Life Imprisonment

A guidelines sentence of life imprisonment is necessary due to the history and characteristics of the defendant, and for both deterrence of these crimes and for the protection of the public against him. *See* 18 U.S.C. § 3553(a). The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).

The defendant provides the following reasons as support behind requesting a sentence below the advisory guideline range: (1) lack of criminal history; (2) guideline calculation effectively gives no acceptance of responsibility credit; (3) cooperation should be credited; (4) mental health history; and (5) no significant risk to re-offend when released. Doc. 88 at 3. The United States disagrees with the

4

defendant's arguments and maintains the position that a lifetime imprisonment sentence is the only appropriate sentence based on statutory sentencing factors and 18 U.S.C. § 3553(a).

### A. The Defendant's Personal History and Characteristics

The defendant posits that he's lived a nearly crime-free, successful life up to this point. The United States Sentencing Guidelines account for individuals who are experiencing their first encounter with the criminal justice system by affording them the lowest possible criminal history category to calculate their guidelines. Additionally, the United States Sentencing Commission has outlined an adjustment for "Certain Zero-Point Offenders" to further credit individuals with a lack of criminal history; however, convictions for sex offenses are not eligible due to the severity of those crimes. Additionally, the defendant committed these crimes over a period longer than ten years. While he may not have been identified or caught and prosecuted, that does not mean that he's lived a crime-free life.

The defendant's employment, home ownership, and involvement in the community, as detailed in his sentencing memorandum, were all done at the same time he was engaged in this horrific conduct of sexually abusing infants to preteens, recording individuals going to the bathroom without their knowledge, and distributing child pornography online, all to satisfy his deviant sexual interests. He used his employment connections to abuse at least one of his victims. He used his control over his home to install a spy-camera in the bathroom to record anyone using the bathroom so he could later use that as material for self-pleasure. He manipulated

5

the relationships he made through his involvement in the community to gain trust of adults and access of children to further his pattern of sexual abuse. The defendant's personal history and characteristics do not weigh in favor of any type of downward variance.

### B. Relevant Mental Health Issues

The defendant's evaluation by two forensic psychologists fails to mitigate the crimes before this Court.

Dr. Valerie McClain's GARS-3 examination exhibits inconsistencies based on what the criminal investigation has revealed regarding the defendant's behavior. Dr. McClain indicated that the defendant showed various difficulties in the Social Interaction portion of this examination; however, his self-admitted involvement in the community, his employment, his self-admitted friendships, and his marriage are all examples of relationships completely in contrast to the criteria used to determine that the defendant struggled in the Social Interaction portion of the examination.

Dr. McClain also found that the defendant "is also markedly impaired for his ability to understand interpersonal and sexual boundaries which impacts his ability to understand and follow appropriate social norms with regard to his interaction in both personal and virtual settings." The defendant knew his conduct was morally wrong and illegal. The defendant was the subject of two separate Department of Children and Families investigations based on his conduct of raping children. He detailed online his excitement about almost getting caught by adults during his sexual abuse of the children under their control. The defendant seemingly thrived on

6

the thrill of his secrecy and the potential of being exposed. These actions are in direct conflict with Dr. McClain's findings.

Dr. Eric Imhof determined that based on an assessment taken without the defendant's awareness, the defendant still showed sexual interest in female children aged zero to seventeen years old. Doc. 88-1 at 6. Additionally, when using the Static-99-R to determine the defendant's risk of re-offending, Dr. Imhof noted a consideration of the "minimum/mandatory sentencing, the guideline term of imprisonment, and the balance of probabilities in his ultimate sentencing." Seemingly, with mandatory minimum sentences of fifteen years each on three of his counts as well as a five-year mandatory minimum sentence on another count, as well as guidelines sentences of life or 145 years, the defendant would in fact be at a low risk of re-offending since he would never be released from custody.

The United States also finds flaws in the STABLE-2007 evaluation. When evaluating whether the defendant displayed a lack of concern for others, Dr. Imhof indicated the defendant "demonstrated empathic and caring statements and attitudes towards others." Doc. 881 at 7. The defendant also described himself as helpful to others. *Id.* at 8. This representation fails to reflect on the defendant's lack of concern for the physical and mental well-being of his child victims, adult victims, and the family members of those victims. He put himself and his deviant sexual interests above everyone else and his actions reflect a serious callousness and disregard for the concern for others. When evaluating whether the defendant engaged in impulsive acts, Dr. Imhof indicated the defendant denied doing so and the available

7

information did not indicate such behavior. The evidence in this case directly contradicts that conclusion. The defendant self-admitted to thrill-seeking in his online posts where he described engaging in sexual abuse of children in scenarios where he thought he may get caught. Additionally, the defendant himself acknowledged to "failing to implement learned skills outside of the therapy setting," yet the recommendation has been made that the defendant is at low-risk for re-offending, especially if he engages in therapy in the Bureau of Prisons. *Id.* at 8, 10. It's the United States' position that the STABLE-2007 score is not adequate based on readily available information.

Ultimately, there is nothing in either forensic psychologist report that mitigates the defendant's actions here. Nor does either report truly reflect upon the trauma the defendant inflicted on the dozens of children he victimized and their families. This was not a one-time thing. The defendant systematically sexually abused children of all ages across an eleven-year period, even after being confronted twice by authorities and nearly getting caught various times by adults. To say there's a low risk of reoffending seems to defy logic.

**C. Acceptance of Responsibility**

The defendant's guidelines calculations represent a three-level reduction for acceptance of responsibility. Additionally, the defendant received an additional eight-level reduction due to his guideline calculation being so much greater than the maximum permitted guideline calculation. His offense conduct level score was so high to properly reflect the seriousness of the defendant's crimes. The defendant,

8

who scores a 51 with full acceptance, should not get the same acceptance of responsibility score as someone whose crimes resulted in a guidelines calculation of 43. The defendant is benefitting from the maximum offense conduct level being 43, and that's where the benefit should end.

### D. Cooperation

The defendant did not fully cooperate with the United States in this matter. As such, the United States did not file a § 5K1.1 motion and this Court should not consider the defendant's "cooperation" as a mitigating factor to downward vary. The defendant participated in a two-day proffer with law enforcement and the United States Attorney's Office. While the defendant provided some information, he provided a fair amount of partial-information or withheld information. He also tried to substantially minimize his involvement in his extensive crime spree lasting over ten years. Despite having folders in his hard drives dedicated by name to many of his victims, when conversing with law enforcement, the defendant provided very minimal information, often indicating he didn't know the names of the children he sexually abused nor their associated adults. He denied giving any of his victims sleeping medication. He denied sexual attraction to several of his victims, indicating he was "generally hands off" but may have taken a photo "hands on." He also denied distributing a large amount of the various images he was confronted with.

This defendant's participation in a proffer does not warrant a downward variance for cooperation. The information he provided was not overly useful, he was

not entirely truthful or complete in his presentation of information, and he did not provide assistance. He is not entitled to such a variance based on his proffer.

### E.  Avoiding Unwarranted Sentencing Disparity

The defendant's sentencing guidelines adequately reflect the detrimental, reprehensible illegal behavior he engaged in with dozens of victims over an eleven-year period. His guidelines calculation is higher than the maximum allowed to properly penalize him for his criminal activity. His egregious pattern of behavior in sexually abusing children as young as infants, filming the abuse, distributing the videos of the abuse, creating images of child pornography by using artificial intelligence, and possessing hundreds of thousands of images and videos of child pornography, all warrant a lifetime imprisonment sentence. The defendant cites no similarly situated defendant with similar guideline enhancements who received a different sentence.

**IV.**    **Conclusion**

This defendant is truly the worst of the worst in the child exploitation world. The

only sentence appropriate to keep society safe from him is lifetime imprisonment.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    */s/ Abigail K. King*
Abigail K. King
Assistant United States Attorney
Florida Bar No. 294963
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone:  (813) 274-6000
Fax:    (813) 274-6103
Email: Abigail.King@usdoj.gov

11

**U.S. v. Culmo**                                    **Case No. 8:23-cr-385-VMC-CPT**

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Russell K. Rosenthal, AFPD


*/s/ Abigail K. King*
Abigail K. King
Assistant United States Attorney
Florida Bar No. 104887
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone:  (813) 274-6000
Fax:    (813) 274-6103
Email: Abigail.King@usdoj.gov

12